**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION**

IN RE:

**ANTHONY FRAMBES**  CASE NO. 08-22398

**DEBTOR**

**MEMORANDUM OPINION**

This matter came before the Court on the Debtor's Motion for Contempt [Doc. 94]. The Debtor, Anthony Frambes, has moved to hold a creditor Nuvell Auto Finance, LLC ("Nuvell"), and a debt collector, CCB Credit Services ("CCB") (hereinafter collectively the "Respondents"), in contempt for violation of the discharge injunction pursuant to 11 U.S.C. §524 based on CCB's attempts to collect a discharged debt on behalf of Nuvell from the Debtor.

The Court held an evidentiary hearing on the matter on December 16, 2011. Upon consideration of the parties' stipulation of facts, testimony and exhibits admitted into evidence, and the record, as well as the arguments of the counsel, the Court finds that CCB willfully violated the discharge injunction by attempting to collect a discharged debt on Nuvell's behalf. Thus, the Debtor's Motion to hold CCB in contempt shall be granted and CCB shall be fined $5,372.91 for this violation.

In contrast, there is no clear and convincing evidence that Nuvell violated the discharge injunction by referring the Debtor's debt to CCB for collection where the evidence shows that the debt was referred for collection from the Debtor's non-debtor spouse. Furthermore, Nuvell's alleged failure to accurately report the status of the Debtor's debt to the credit bureaus is not, based on these facts, an act to collect a debt in violation of the discharge injunction. Thus the Debtor's Motion to hold Nuvell in contempt shall be overruled.

**Facts**

On November 22, 2008, the Debtor and his non-debtor wife, Tiffany Frambes, signed a Retail Installment Sales Contract to finance the purchase of a 2007 Cadillac Escalade (the "Vehicle"). Two days later, on November 24, 2008, the Debtor, acting *pro se*,[1] filed for Chapter 7 bankruptcy. On December 29, 2008, the Debtor filed a notice to include Nuvell[2] as a secured creditor. Nuvell then filed a Proof of Claim as a secured creditor for the amount of $37,245.65 on December 31, 2008.

On January 6, 2009, the Debtor signed and filed a reaffirmation agreement with Nuvell reaffirming his debt on the Vehicle. However, on April 15, 2009, the Court entered an Order directing the Debtor to turn over the Vehicle to the Trustee because the lien on the Vehicle was unperfected. On May 22, 2009, the Trustee and counsel for Nuvell entered into a stipulation dispensing with the need to file an adversary proceeding whereby Nuvell agreed as follows: (1) Nuvell has an unperfected security interest in the Vehicle which is voidable by the Trustee pursuant to 11 U.S.C. §544; (2) the Vehicle may be sold by the Trustee for the benefit of the estate pursuant to 11 U.S.C. §551; and (3) Nuvell shall have leave to file an unsecured proof of claim for the amount of its claim against the Debtor. The stipulation was approved by the Court on June 3, 2009.

The stipulation was later amended on June 4, 2009, to add a declaration that the transfer of the Vehicle to Mrs. Frambes was null and void and Mrs. Frambes shall relinquish her

---

[1] Alexander Edmondson, one of the Debtor's current counsel, entered his appearance on the Debtor's behalf on April 24, 2009.

[2] Nuvell filed its Proof of Claim under the name Nuvell Credit Company and the Debtor listed Nuvell Credit Company as a creditor as part of his Matrix of Creditors. This Motion for Contempt was filed against Nuvell Auto Finance, Inc. Nuvell Auto Finance, Inc. has responded to the Motion to Contempt. Based on the parties' stipulations that "Nuvell," defined as "Nuvell Auto Finance, Inc.," is a creditor listed in the Debtor's bankruptcy petition, for the purposes of this Motion this Court shall treat Nuvell Credit Company and Nuvell Auto Finance, Inc. as one in the same.

interest in the Vehicle. This amendment was necessary because the Debtor had initially titled the Vehicle in Ohio in his name, but after filing the bankruptcy, transferred the title of the Vehicle into the joint names of himself and his wife and registered the Vehicle in Kentucky. The Court approved this amended stipulation as well. The Trustee sold the Vehicle and the Court subsequently approved the sale.

On April 6, 2010, the Debtor was granted a discharge. Despite receiving notice of the Debtor's discharge, on or about October 11, 2010, Nuvell referred the debt for collection to CCB, a debt collector who performs debt collection for Nuvell on a contingency basis. CCB was not a creditor of the Debtor and was not involved in the Debtor's bankruptcy. The information received by CCB from Nuvell listed Mrs. Frambes as the maker on the account and the Debtor as the co-maker of the debt. Significantly, Mrs. Frambes was a co-signor on the loan but was not a co-debtor in the Debtor's bankruptcy.[3] The information received and recorded in CCB's records does not, on its face, show that the Debtor had filed bankruptcy.

On October 13, 2010, CCB performed a systematic bankruptcy scrub (a search to determine if the subject has filed bankruptcy) on Mrs. Frambes as the primary obligor and "maker" of the debt and no bankruptcy was discovered. Pursuant to its procedure, CCB did not perform a bankruptcy scrub on the co-maker Debtor. That same day, CCB pulled Mrs. Frambes credit report and sent her a collection notice.

On October 13, 2010, CCB also made its first phone call in an attempt to collect on the account. A representative for CCB reached the Debtor and requested payment in full on the account, but was informed by the Debtor that he no longer owed the debt as it was discharged. CCB's records show no other information was provided because the Debtor hung up but the Debtor testified he also gave CCB the name of his bankruptcy counsel and contact information.

---

[3] Mrs. Frambes filed a separate Chapter 7 bankruptcy, Case No. 11-20789, on March 29, 2011.

3

On October 14, 2010, CCB pulled the Debtor's credit report from Transunion. It is unclear from the testimony and exhibits whether the Transunion credit report pulled in October of 2010 indicated that the Debtor had filed bankruptcy or that the debt at issue had been discharged. Four days later, on October 18, 2010, CCB mailed a collection notice to the Debtor. On October 21, 2010, the Debtor received another phone call and message from CCB attempting to collect on the debt related to the Vehicle. The next day, October 22, 2010, the Debtor returned CCB's phone call. According to the Debtor, he informed CCB that he had filed bankruptcy and then provided CCB the name of his counsel and his contact information a second time. CCB's records show that the Debtor informed CCB that he did not owe the debt, but that the conversation was cut short by the phone disconnecting.

CCB made two more phone calls on November 1 and November 2, 2010, relating to the account, but CCB's records reflect that the calls could not be completed as dialed. In addition, on November 2, 2010, CCB spoke to Mrs. Frambes' grandmother. CCB continued trying to collect on the debt through two additional phone calls on November 10, 2010, and November 13, 2010, whereby CCB's records indicate that the number dialed is incorrect and/or the Debtor was unavailable. The Debtor eventually spoke to CCB's representation on November 13, 2010, and he testified that during that phone call he informed CCB of his bankruptcy, counsel's name, and counsel's contact information for a third time. This time, CCB's records reflect the Debtor informed CCB that he had filed bankruptcy and provided the name and number of his bankruptcy counsel.

CCB's President, Ron Krech, testified that if a debtor notifies CCB that the debt at issue was discharged in bankruptcy, CCB's procedure is to request the name of counsel and information related to the bankruptcy in order to verify the debt had actually been discharged. Until this information is provided, CCB takes the position that the bankruptcy is not "verified"

4

sufficient for CCB to cease its collection efforts. Thus, Mr. Krech testified that consistent with this policy, CCB's records show that CCB continued to attempt to collect on the debt despite the Debtor's statements that the debt was discharged or not owed until its records show that the Debtor provided the name of his bankruptcy counsel, Alexander Edmondson, and counsel's contact information.

Although the Debtor testified that he notified his attorney in mid-to-late October of 2010 of CCB's attempts to collect the debt, and counsel's fee statements confirm this, the Debtor's counsel did not contact CCB until almost a month later. On November 16, 2010, co-counsel for the Debtor, Benjamin Wolf, mailed a letter to both Nuvell and CCB advising them of their alleged violation of the discharge injunction. Mr. Wolff demanded that the Respondents (1) withdraw demands for payment from the Debtor; (2) correct any credit information they may have provided to reflect the discharge of the debt related to the Vehicle; and (3) pay a settlement amount of $10,000.00 to the Debtor. Attached to the letter was a draft adversary complaint seeking relief against the Respondents for violations of the discharge injunction, the Fair Debt Collection Practices Act, or 15 U.S.C. §1692, and the Kentucky Consumer Protection Act, or K.R.S. §367.170, which the Debtor's co-counsel threatened to file if the dispute was not settled.

On or about December 9, 2010, counsel for CCB countered the $10,000.00 offer to settle the dispute with a counteroffer of $1,000.00. This counteroffer was rejected by the Debtor and the demand for $10,000.00 was reiterated.

On December 29, 2010, the Debtor's bankruptcy case was closed. On January 13, 2011, the Debtor's counsel contacted CCB and was informed that the Debtor's account was closed on November 19, 2010, or the day that CCB received the November 15, 2010, letter. On January 24, 2011, the Debtor moved to reopen his case to pursue his claims against the Respondents in an adversary proceeding.

5

On January 31, 2011, the Debtor filed an adversary proceeding in this Court, Case No. 11-2004, against CCB and Nuvell alleging the same causes of action threatened in the draft adversary complaint. On May 25, 2011, the Court entered an Order dismissing the adversary proceeding and holding pursuant to *Pertuso v. Ford Motor Credit Company*, 233 F.3d 417 (6th Cir. 2000) that there is no private right of action for a violation of the discharge injunction, which is only punishable by sanctions awarded through contempt proceedings brought by motion as part of the main case. The Court also dismissed the Fair Debt Collection Practices Act claim and the Kentucky Consumer Protection Act claim for lack of subject matter jurisdiction. The adversary proceeding and the bankruptcy case were subsequently closed.

At the end of July in 2011, in preparation to purchase a new vehicle, the Debtor reviewed his credit reports from Equifax, Transunion, and Experian. The reports indicated that the loan with Nuvell had been "charged-off" with no reference to his bankruptcy filing. These reports had changed from the Debtor's prior credit reports that he reviewed in March of 2011 which indicated that his account with Nuvell was discharged through bankruptcy. The Debtor testified that as a result of the change in his credit report, he has been forced to lease a vehicle at a higher rate.

On August 11, 2011, the Debtor again moved to reopen his bankruptcy case to file a motion to hold CCB and Nuvell in contempt for violations of the discharge injunction and the Fair Credit Reporting Act, or 15 U.S.C. §1681. In addition to seeking actual damages as a contempt sanction and fines pursuant to 15 U.S.C. §1681 for the alleged violations of the Fair Credit Reporting Act, the Debtor also seeks to recover punitive damages and attorneys' fees. On October 11, 2011, the Court dismissed the Debtor's Fair Credit Reporting Act claim and set the Debtor's Motion for Contempt for evidentiary hearing on November 29, 2011.

After a discovery dispute arose between the parties on the eve of the scheduled evidentiary hearing, the Court granted the Debtor's motion for a continuance and an evidentiary hearing was finally held on December 16, 2011.  The Debtor testified as to the events that led to the Motion and his damages as result, to wit: (1) his distress in having to litigate the contempt allegations; (2) his loss in income from missing work two days to prosecute this action ; (3) the alleged impact on his credit score that resulted in a higher lease rate for a new vehicle; and (4) his attorneys' fees.  The Debtor did not introduce any medical evidence of the effect of the alleged violations on his physical or emotional health, nor did he produce any evidence supporting his loss in income or the impact on his credit score beyond his own general testimony.  The Debtor's counsel, Alexander Edmondson and Benjamin Wolff, testified as to the fees incurred, $43,882.74, as well as costs in the amount of $372.91.  Mr. Krech testified in CCB's defense.  Nuvell did not present any witnesses.  The matter was taken under submission and is now ripe for decision by this Court.

## Discussion

The Court has jurisdiction pursuant to 28 U.S.C. §1334.  This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and (O).  Venue is proper pursuant to 28 U.S.C §1409.

A.    <u>Discharge Injunction</u>

The discharge injunction "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. §524(a)(2).  A violation of the discharge injunction exposes a creditor to potential contempt of court.  *Pertuso*, 233 F.3d at 421-423 (6th Cir. 2000).

In order to impose contempt sanctions on an alleged violator of the discharge injunction, the Court must conclude that the act was contemptuous.  In the context of a violation of the

7

discharge injunction, this means that the act must have been willful. *See Gunter v. Kevin O'Brien & Assocs., LPA (In re Gunter)*, 389 B.R. 67, 75 (Bankr. S.D. Ohio 2008) ("In light of the Sixth Circuit's holding in *Pertuso*, this court cannot award damages for violations of the discharge injunction that are technical or inadvertent and do not rise to the level of contempt."); *Kanipe v. First Tenn. Bank (In re Kanipe)*, 293 B.R. 750, 756 (Bankr. E.D. Tenn. 2002) (denying sanctions because, "although a violation of the discharge injunction occurred, the violation was not willful and therefore not contemptuous."). The question of whether the violation is willful is based on whether the creditor intended the acts that constituted the violation. The standard does not require proof that the creditor deliberately violated the injunction. *In re Waldo*, 417 B.R. 854, 891 (Bankr. E.D. Tenn. 2009). Thus, a debtor who alleges a violation of §524(a)(2) must establish by clear and convincing evidence (1) the creditor violated the discharge injunction and (2) the creditor did so with actual knowledge of the injunction. *In re Gunter*, 389 B.R. at 72 (citing *Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543, 550 (6th Cir. 2006)).

The Debtor has met his burden to show by clear and convincing evidence that CCB willfully violated the discharge injunction. First, CCB attempted to collect on a debt owed by the Debtor to Nuvell post-discharge. CCB made multiple phone calls and sent letters to the Debtor in an attempt to collect on this debt. While CCB has argued that it lawfully could attempt to collect the debt from Mrs. Frambes, the evidence shows that she was not the only target of CCB's phone calls and letters. CCB's own records and testimony by the Debtor are sufficient to show that CCB attempted to collect the discharged debt from the Debtor. This is in violation of §524(a)(2).

Furthermore, the evidence shows that CCB had actual knowledge of the discharge injunction. The Debtor testified that he notified CCB during the October 13, 2010, phone call that his debt was discharged and provided CCB the name of his counsel and his counsel's

8

contact information.  Although CCB disputes that it received the name of the Debtor's counsel or his contact information from the Debtor, CCB's records reflect that on October 13, 2010, its agent was told by the Debtor that the debt was "discharged."  The Court is constrained to find any other conclusion that can be drawn from this information other than a discharge in bankruptcy.

CCB argues that it is not enough that the Debtor told it that the debt had been discharged in bankruptcy; rather, CCB contends that the Debtor must provide the name of his bankruptcy counsel and counsel's contact information so that CCB may then verify the information provided is true.  The Court disagrees.  CCB's decision to require the Debtor to provide his counsel's contact information to confirm his discharge in bankruptcy is nothing more than a business decision.  CCB could have taken a number of actions to confirm the Debtor's reported bankruptcy beyond relying on the Debtor to provide the contact information of his bankruptcy counsel.  CCB had access to the Debtor's address and social security number.  It could have used this information to confirm the discharge of his debt through the Debtor's credit report, which it already pulled as a matter of course.  Furthermore, CCB could have used a system such as PACER to search court records for Mr. Frambes or CCB could have merely contacted the clerk of the bankruptcy court in the district in which the Debtor resided to confirm if a bankruptcy had been filed and a discharge entered.  Any one of these methods would have allowed CCB to confirm the Debtor had filed bankruptcy and the debt had been discharged from an additional reliable source.  But CCB chose to require additional information from the Debtor to confirm the bankruptcy rather than incur the minimal time and cost to confirm the bankruptcy itself through other sources.   In making this choice, CCB took the risk that it could violate a discharge injunction and now finds itself on the losing end of its gamble.

As for Nuvell, the Debtor has failed to meet his burden to show that Nuvell willfully violated the discharge injunction. The Debtor has charged that Nuvell knowingly referred a debt that had been discharged in bankruptcy to a debt collector for collection. Nuvell participated in the Debtor's bankruptcy and knew of the discharge. Creditors that knowingly refer or sell a discharged debt to a debt collector for collection have been held in contempt for willfully violating the discharge injunction. *See, e.g., In re Lafferty*, 229 B.R. 707, 713 (Bankr. N.D. Ohio 1998). But Nuvell has argued, and the Court agrees, that the debt was valid as against Mrs. Frambes, who had not filed bankruptcy or received a discharge, and nothing prevented Nuvell from attempting to collect the debt from Mrs. Frambes. Further, the information received by CCB from Nuvell shows Mrs. Frambes as the primary obligor on the account. Mr. Krech testified that CCB's records show that CCB was attempting to collect the debt from Mrs. Frambes. While the evidence shows several instances of attempts to collect the debt from the Debtor in addition to Mrs. Frambes, nothing in the record indicates that CCB received any information at the outset from Nuvell that the Debtor, listed as the co-maker on the account, had filed bankruptcy. The Debtor has not presented clear and convincing evidence that Nuvell willfully referred the Debtor's discharged debt to CCB for collection.

Furthermore, the Debtor has alleged that Nuvell willfully violated the discharge injunction by incorrectly reporting his debt as "charged-off" to the credit agencies. While there are certainly discrepancies between the credit reports of March 2011, in which the debt was reported as discharged in bankruptcy, and July 2011, in which the debt was reported as "charged-off," there is no evidence that Nuvell was the cause of these inconsistencies or that this reporting was any attempt by Nuvell to collect the debt from the Debtor. Thus, there is no evidence that this inaccurate reporting violated the discharge injunction. *See Small v. University of Kentucky Federal Credit Union (In re Small)*, Bankr. No. 08-52114, Adv. No. 10-5111, 2011

10

WL 1868839, *4 (Bankr. E.D. Ky. May 13, 2011) (*citing Mahoney v. Washington Mutual, Inc. (In re Mahoney*), 368 B.R. 579, 584 (Bankr. W.D. Tex. 2007)).

B.    Sanctions

As the Debtor has met his burden of proof by showing that CCB willfully violated the discharge injunction by attempting to collect a discharged debt, the Court now turns to the sanctions that may be imposed for CCB's conduct.  As instructed by *Pertuso*, because the Code does not specify a remedy for a violation of the discharge injunction, the Debtor's only recourse is to request sanctions for contempt of court.  *Pertuso*, 233 F.3d at 421 ("The obvious purpose is to enjoin the proscribed conduct – and the traditional remedy for violation of an injunction lies in contempt proceedings, not a lawsuit such as this one.")

If contempt is present, the court may sanction the contemnor by awarding damages and attorneys' fees to the debtor.  *In re Gunter*, 389 B.R. 71-72 (*citing TWM Mfg. Co. v. Dura Corp.*, 722 F.2d 1261, 1273 (6th Cir. 1983) (holding the "award of attorney's fees and expenses to a successful movant may be appropriate in a civil contempt proceeding.")); *Duling v. First Fed. Bank of the Midwest (In re Duling)*, 360 B.R. 643, 645 (Bankr. N.D. Ohio 2006) ("The sanctions imposed by a court may include an award of damages to the debtor, including reasonable attorney fees.").  *See also In re Walker*, 257 B.R. 493, 496 (Bankr. N.D. Ohio 2001) (citing *United States v. Bayshore Assocs., Inc.*, 934 F.2d 1391 (6th Cir. 1991) and holding damages caused by the contemnor's non-compliance, based on evidence of actual loss, may be awarded for civil contempt or a coercive fine may be imposed).  As reviewed above, the Debtor has testified that his damages from CCB's contempt include: (1) his distress; (2) loss in income; and (3) his attorneys' fees.  The Debtor's damages for his distress and loss of income are speculative at best.  There is no medical evidence that the Debtor suffered any emotional distress or a quantification of medical expenses incurred as a result.  Nor has the Debtor

11

quantified his loss of income or provided any proof of the same. The Court cannot award damages based on mere speculation, guess or conjecture. *See Archer v. Macomb County Bank*, 853 F.2d 497 (6th Cir. 1988).

The Debtor has produced affidavits from his counsel and itemized bills to support his claim for attorneys' fees as damages. Unlike attorney fee damages as part of a violation of the automatic stay, the Court has the discretion to award attorneys' fees and in doing so, must find them to be reasonable. *Cf.* 11 U.S.C. §362(k) ("[A]n individual injured by any willful violation of a stay provided by this section *shall* recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages.") and *In re Duling*, 360 B.R. at 645 ("The sanctions imposed by a court *may* include…*reasonable* attorney fees.") (emphasis added). CCB has argued that the Debtor's request for over $40,000 in fees is unreasonable because (1) CCB never collected any money from the Debtor; (2) CCB ceased its collection efforts when the Debtor notified CCB of his discharge and provided the name and contact information for his bankruptcy counsel; and (3) to award these fees is to award the Debtor and his counsel's attempts to profit from any alleged violation of the injunction.

First, "merely because a creditor stands ready, and does in fact cease those actions which give rise to a violation of the discharge injunction does not mean that debtor's counsel would never be entitled to commence an action in this Court." *See In re Duling*, 360 B.R. at 647. However, "it is inherently improper for a debtor or their attorney to view violations [of the automatic stay or the discharge injunction] as a profit-making endeavor." *Id.* In fact, this Court has refused to award the total attorneys' fees requested as damages for an automatic stay violation where there is evidence that the debtor and/or his counsel could have mitigated damages by attempting to resolve the matter prior to litigation but did not do so. *See Clay v. Credit Acceptance Corp. (In re Clay)*, Bankr. Case No. 10-53848, Adv. Case No. 11-5003, 2011

12

WL 2312334 (Bankr. E.D. Ky. June 10, 2011) (refusing to award $10,300.00 in attorneys' fees for an automatic stay violation for failure to mitigate damages prior to the filing of the adversary proceeding). The facts surrounding a violation of the discharge injunction are unique to each case and the facts must be considered in light of both these considerations.

The Court first notes that to some degree the Debtor brought the circumstances that led to this litigation upon himself. The Debtor contributed to the confusion as to the primary obligor on the account for the Vehicle, and whether the debt had been discharged or "charged-off," by purchasing the Vehicle and titling it in his name two days before bankruptcy, entering into a reaffirmation agreement with Nuvell shortly thereafter (which was nullified when the Vehicle was ordered to be turned over to the Trustee), and then attempting to transfer the title of the Vehicle from his name to the joint names of himself and his wife and registering it in a different state. Without these machinations, the Debtor may have never found himself on the receiving end of phone calls attempting to collect on his discharged debt from either himself or his wife.

Moreover, after first being contacted by CCB, the Debtor did not immediately notify his counsel, but waited until October 24, 2010, almost two weeks after the first contact, before he spoke to his counsel about the collection efforts. Upon receipt of that information, counsel did not pick up the phone and contact CCB nor did counsel immediately send out any written warning to CCB of its violation. Rather, counsel spent the next three weeks researching and drafting an adversary complaint to attach to a demand letter that did not go out to CCB and Nuvell until November 16, 2010. During these weeks, CCB continued its collection efforts, and thus continued to violate the discharge injunction, but upon receipt of the November 16, 2010 letter, the collection efforts stopped. If the Debtor had immediately told his counsel after the first contact, and counsel had immediately contacted CCB, the collection efforts would have likely ceased sooner and much of this litigation could have been avoided.

That said, the Debtor's actions do not excuse CCB's behavior. CCB willfully violated the discharge injunction in making collection phone calls and sending collection letters to the Debtor after the Debtor told CCB the debt was discharged. CCB's policy pursuant to which it will continue its collection efforts until the bankruptcy is "verified" by the Debtor does not justify CCB's knowing violations of the discharge injunction, particularly in light of the fact that CCB had other resources it could have easily used to confirm the Debtor's bankruptcy. CCB's decision not to use these resources is a risk it chose to take. The Court does not condone this behavior and CCB should be held in contempt of Court for this violation.

This is not a situation where a creditor made hundreds of phone calls or sent numerous letters in an attempt to collect or a situation where the creditor did in fact collect money from the debtor. CCB ceased its collection efforts, which amounted to less than ten contacts between October 13, 2010, and November 13, 2010, and offered $1,000 to remedy its behavior before court action was filed. The Debtor then rejected that offer and refused to negotiate from his original $10,000 offer to settle, thereby choosing litigation, and the attorneys' fees that would result, instead of resolution.

In considering the evidence and balancing the importance of punishing willful violations of the discharge injunction, by sanctioning contemnors for the actual damages that the debtor suffers, with the importance of preventing motions for contempt from becoming a profit-making endeavor, CCB shall be held in contempt and sanctioned a total of $5,372.91, or $5,000 in reasonable attorneys' fees and $372.91 in costs incurred by the Debtor due to CCB's conduct.

**Conclusion**

Based on the foregoing findings of fact and conclusions of law, IT IS HEREBY ORDERED that the Debtor's Motion for Contempt [Doc. 94] is GRANTED as to CCB Credit

14

Services and DENIED as to Nuvell Auto Finance, Inc.  CCB Credit Services is in CONTEMPT of Court for its violation of 11 U.S.C. §524(a)(2) and is ordered to pay the Debtor $5,372.91 for the Debtor's reasonable attorneys' fees and costs.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits, and arguments of counsel, regardless of whether or not they are specifically referred to in this decision.

Copies to:

Alexander Edmonson, Esq.

Benjamin Wolf, Esq.

Ellen Arvin Kennedy, Esq.

Tyler Powell, Esq.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Tracey N. Wise*
**Bankruptcy Judge
Dated: Tuesday, February 07, 2012
(tnw)**